267 F.2d 776
 Matter of EASTERN SUPPLY COMPANY, a Co-Partnership Consisting of Munroe E. Greene and Joseph Blonstein, Partners.
Eastern Supply Company, a Co-Partnership Consisting of Munroe E. Greene and Joseph Blonstein, Partners, Appellants.
 No. 12865.
 United States Court of Appeals Third Circuit.
 Argued May 28, 1959.
 Decided June 17, 1959.
 
 David E. Seidelson, Pittsburgh, Pa. (Meyer W. Gordon, Rothman, Gordon & Foreman, Pittsburgh, Pa., on the brief), for appellants.
 Harry R. Levy, Pittsburgh, Pa., for appellee.
 Before GOODRICH, KALODNER and STALEY, Circuit Judges.
 GOODRICH, Circuit Judge.
 
 
 1
 This is an appeal from an order in bankruptcy in which the court refused to dismiss the original petition and subsequent intervening petitions. The case was thoroughly considered by the trial judge who wrote a careful opinion going into each one of the questions raised here. D.C.W.D.Pa.1959, 170 F.Supp. 246. We have very little to add to his very competent treatment of the subject.
 
 
 2
 It appears that the bankrupt was in receivership in a Pennsylvania state court. One day before the statutory period expired, three business firms alleging themselves to be creditors signed a petition for an adjudication of involuntary bankruptcy.[1] This petition was signed on behalf of each of the firms by Harry R. Levy, Esquire, who signed both as attorney-in-fact and attorney-at-law. In addition the verification was signed "Harry R. Levy."[2] The verification said: "Harry R. Levy, Attorney in Fact for * * * [named creditors] the petitioners within named, do hereby make solemn oath that the statements contained in and within the foregoing petition, subscribed by them, are true."
 
 
 3
 The appellant says that this will not do. He says a verification "must contain a statement that he is the duly authorized agent for the creditors, and that he has authority to sign the petition on behalf of the creditors." The argument made by appellant takes us over a very great deal of the ground covered by this Court in its decision in In re Pearl Coal Co., 3 Cir., 1940, 115 F. 2d 158. Appellant would have us dismiss much of our discussion there as dictum. Whether dictum or not, a re-examination of the case leads us to believe that what was said there was correct. It was pointed out that authority to sign nearly all kinds of documents may be conferred upon an agent and that a petition in bankruptcy is not one of the exceptions. To what we said in Pearl we may add that the signing of such a document by one on behalf of another carries with it the general warranty of authority by an agent who does acts on behalf of a principal. See Restatement, Agency 2d § 329 (1958).
 
 
 4
 From the foregoing we think it clear that the petition signed "Attorney in Fact" was sufficient on its face. Likewise, the verification stating that Levy was attorney-in-fact was an adequate designation of authority. See 3 Collier, Bankruptcy ¶ 18.35 at n. 28 (14th ed. Moore & Oglebay 1956).
 
 
 5
 In similar fashion appellant's argument that an attorney cannot sign or verify the petition in the absence of an emergency has been settled by the discussion in the Pearl case, 115 F.2d at page 160.
 
 
 6
 The appellant secured the deposition of Mr. Levy.[3] On the basis of information gained from this deposition he makes two points. One point is that Mr. Levy did not have authority from the petitioning creditors to sign the petition. The appellant's argument on this question of authority goes almost to the place of requiring a corporate resolution before a corporate employee may properly sign, on behalf of his employer, an involuntary bankruptcy petition against a debtor. He does not, however, give us authority for such a strict rule and we do not think that it exists.
 
 
 7
 The further point is pressed that the attorney's authority came too late, that is, after the petition was filed. But we should bear in mind the general rule that the ratification of an act purported to be done for a principal by an agent is treated as effective at the time the act was done. In other words, to talk technical even though fictitious language, the ratification "relates back" in time to the date of the act by the agent. We have no direct authority saying that this is applicable to bankruptcy petitions but in the absence of something to indicate to the contrary, the general principle is applicable. See Kay v. Federal Rubber Co., 3 Cir., 1930, 46 F.2d 64, 65; Restatement, Agency 2d §§ 82, 100A (1958).
 
 
 8
 The other point appellant makes out of this deposition is that it shows that Mr. Levy had no "knowledge" of the transactions with the bankrupt by the petitioning creditors. These claims are for goods sold and delivered. We may take it for granted that Mr. Levy was not in the stockroom when the goods were packed nor was he in the receiving room of Eastern Supply when the freight shipments arrived. Neither were the presidents of any of the corporations concerned. Indeed, one's imagination is tempted to spread itself in thinking how a company like United States Steel Corporation would ever be able to file a claim in bankruptcy against one of its customers if personal knowledge on the part of the signer were required. Is the president to get himself a resolution of the board, then observe the loading of the steel products on the railroad cars and follow them into the receiving room of the buyer? We cannot think that the statute[4] meant any such thing as this. Our knowledge in most affairs in life comes to us from information communicated to us by others. We do not think there is an exception in the case of knowledge required for one filing a bankruptcy petition.
 
 
 9
 A final attack on the original petition is based upon a change in wording which was made in the Bankruptcy Act in 1952. Section 59, sub. b starts by saying, "Three or more creditors who have provable claims liquidated as to amount and not contingent as to liability * * *."[5] The section as it formerly stood required that the claims be "fixed as to liability and liquidated as to amount."[6]
 
 
 10
 The petition, following Supreme Court Form No. 5, was in the words used before the amendment. It is attacked on this ground.
 
 
 11
 We cannot see any material difference between the wording of the amendment and the prior wording of the section. In any event, we have no hesitancy in saying that the allegation that the claim is fixed as to liability and liquidated in amount is adequate for a claim based on goods sold for a definite price and delivered. To hold otherwise would, it seems to us, carry an insistence upon verbiage to a point that would make the rules of common law pleading as simple as a primer.
 
 
 12
 The appellant's last point attacks the permission which the court gave for other creditors to intervene. The trial judge said and the appellant says and the appellee admits that if the original petition is void later intervention will not save the day. But we have already concluded that the original petition is to stand. Any intervention by these same creditors cannot prejudice the appellant.
 
 
 13
 The judgment of the district court will be affirmed.
 
 
 
 Notes:
 
 
 [1]
 See § 3 of the Act, as amended, 66 Stat. 421-422 (1952), 11 U.S.C.A. § 21
 
 
 [2]
 Section 18, sub. c of the Act states "All pleadings setting up matters of fact shall be verified under oath." 30 Stat. 551 (1898), 11 U.S.C.A. § 41, sub. c
 
 
 [3]
 We are not going into the question of whether the deposition was properly secured at this stage or whether the appellant can attack only those defects which appear on the face of the petition, because we think that what was disclosed in the deposition does not materially affect the result in the case
 
 
 [4]
 See note 2, supra
 
 
 [5]
 66 Stat. 425, 11 U.S.C.A. § 95, sub. b
 
 
 [6]
 52 Stat. 868, 11 U.S.C.A. § 95, sub. b